UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

JIAN WU,

Defendant.

**INDICTMENT**

25 Cr.

25 CRIM 413

## COUNT ONE
### (Wire Fraud)

The Grand Jury charges:

1.  JIAN WU, the defendant, defrauded his employer, a New York-based investment management firm (the "Firm"), by secretly manipulating computer-based algorithmic investment models that were used to execute securities trading strategies at the Firm. Between in or about 2021, and in or about 2023, WU deceived the Firm in at least two ways. First, WU designed models, which were approved and released for use, and then covertly made post-release changes to the models' parameters, which significantly altered the models' behavior. Second, WU secretly tested his models on data sets that misrepresented how the models would perform once approved and released. WU's intention in making misrepresentations to the Firm and manipulating the models was to increase the amount of compensation the Firm awarded him. As a result of these actions, WU's models appeared more valuable to the Firm than they were, and the Firm, in turn, rewarded WU with an inflated year-end compensation of approximately $23 million. When the Firm uncovered WU's scheme, WU made additional unauthorized changes to the models' parameters in an attempt to conceal his prior tampering. The Firm fired WU in 2024.

## WU's Scheme

2.     The Firm was a Manhattan-based investment management firm that focused on algorithmic trading strategies. JIAN WU, the defendant, worked as a modeler at the Firm between 2018 and 2024. In his role, WU designed models for the Firm's investment vehicles and related funds, using data to build price forecasting models that generated forecasts on stocks and other financial instruments. Based on these models, the Firm executed purchases and sales of securities, which traded on national exchanges.

3.     The Firm had procedures for the testing and approval of new trading models. These procedures were designed to assess, among other things, the models' characteristics, including how correlated, or similar, a model appeared to other models that were already being used by the Firm. The Firm wanted newly released models to add "alpha"[1] that was not already captured by its existing models. Before a model would be approved, the modeler needed to submit various forms and reports that described how the model worked. One such form was the "Model Bio," which included details regarding the "decorrelation" of a new model, which reflected the degree to which the new model's forecast was uncorrelated with pre-existing models that the Firm was already using in a live trading environment. At relevant times, the Firm required each modeler to attest, among other things, that "the model . . . must reflect the finalized version of your model, and is exactly how the model will behave in a research simulation post-release," and that the modeler "has not made any changes to the model logic or forecast construction relative to the [model] that was submitted."

4.     Between in or about 2021 and in or about 2023, JIAN WU, the defendant, submitted fourteen models to the Firm, each of which was approved for use by the Firm. As to certain of

---

[1] "Alpha" is a measure of the active return on an investment—the performance of that investment compared with a suitable market index.

these models, WU submitted, or caused to be submitted, false information in the Model Bios, claiming that he had used certain data to test the models' decorrelation when, in truth, he had secretly used other data in an attempt to skew the results. As to WU's other models, WU covertly changed the decorrelation parameters for the models that he had described and attested to when submitting the models for approval. As a result of WU's actions, the versions of WU's models that were deployed for live trading in multiple portfolios of the Firm were different than the models that WU had submitted for approval.

5. After JIAN WU, the defendant, submitted false information and covertly changed his models, the Firm began using WU's models in the Firm's trading platforms. The models had positive performance but, unbeknownst to the Firm, were highly correlated to other models in the Firm's live trading platforms.

6. In or about late 2022, JIAN WU, the defendant, spoke with a supervisor at the Firm regarding his annual compensation. WU demanded a significant increase in compensation based on the performance of his models. The Firm, in turn, awarded WU approximately $23 million in compensation based, at least in part, on the performance of his models. WU then used some of his compensation to purchase a multimillion-dollar apartment in Manhattan, New York.

7. In or about 2023, other employees at the Firm noticed that the models of JIAN WU, the defendant, appeared to be more correlated to existing models than expected. The Firm questioned WU about his models, and WU tried to conceal his misconduct and to mislead Firm employees who examined the performance of his models. Among other things, WU made additional unauthorized changes to the models' decorrelation parameters in an effort to hide his prior tampering.

8.  In or about August 2023, the Firm interviewed JIAN WU, the defendant, regarding his models. WU admitted, among other things, that he had changed the models' decorrelation parameters without obtaining the necessary approvals. The Firm thereafter terminated WU's employment.

## Statutory Allegations

9.  From at least in or about 2021 through at least in or about 2023, in the Southern District of New York and elsewhere, JIAN WU, the defendant, knowingly having devised and intended to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, WU engaged in a scheme to defraud the Firm by secretly manipulating certain algorithmic trading models that were used for the Firm's investment strategies, including by directing emails and other electronic communications into Manhattan, New York, to obtain increased and unearned compensation.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT TWO
### (Securities Fraud)

The Grand Jury further charges:

10. The allegations contained in paragraphs 1 through 8 of this Indictment are repeated and realleged as if fully set forth herein.

11. From at least in or about 2021 through at least in or about 2023, in the Southern District of New York and elsewhere, JIAN WU, the defendant, willfully and knowingly, directly and indirectly, by the use of a means and instrumentality of interstate commerce and of the mails,

4

and of a facility of a national securities exchange, used and employed, in connection with the purchase and sale of a security registered on a national securities exchange and a security not so registered, a manipulative and deceptive device and contrivance, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing a device, scheme, and artifice to defraud; (b) making an untrue statement of material fact and omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they was made, not misleading; and (c) engaging in an act, practice and course of business which operated and would operate as a fraud and deceit upon a person, to wit, WU engaged in a scheme to defraud the Firm and increase his own compensation by secretly manipulating certain algorithmic trading models that were used by the Firm in connection with the Firm's purchase and sale of securities, which traded on national exchanges, in Manhattan, New York.

(Title 15, United States Code, Sections 78j(b) & 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2.)

## COUNT THREE

### (Engaging in a Monetary Transaction in Property Derived from Specified Unlawful Activity)

The Grand Jury further charges:

12. The allegations contained in paragraphs 1 through 8 of this Indictment are repeated and realleged as if fully set forth herein.

13. In or about March 2023, in the Southern District of New York and elsewhere, JIAN WU, the defendant, within the United States, knowingly engaged and attempted to engage in a monetary transaction, as defined in Title 18, United States Code, Section 1957(f)(1), in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity, to wit, WU spent millions of dollars of proceeds from the wire fraud and securities fraud charged

in Counts One and Two of this Indictment on an apartment located at 200 East 95th Street, Apartment 9A, Manhattan, New York.

(Title 18, United States Code, Sections 1957 and 2.)

## FORFEITURE ALLEGATIONS

14. As a result of committing the offenses alleged in Counts One and Two of this Indictment, JIAN WU, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses, and the following specific property: the single residential condo unit located at Block 1540, Lot 1348, Unit 9A, 200 East 95th Street, recorded under deed document ID 2023032700050001, in Manhattan, New York.

15. As a result of committing the offense alleged in Count Three of this Indictment, JIAN WU, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all property, real and personal, involved in said offense, or any property traceable to such property, including but not limited to a sum of money in United States currency representing the amount of property involved in said offense.

### Substitute Assets Provision

16. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third person;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

FOREPERSON

*Jay Clayton*
JAY CLAYTON
United States Attorney